UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WELLS FARGO BANK, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>PINE BARRENS STREET TRUST; RMI MANAGEMENT, LLC dba RED ROCK FINANCIAL SERVICES; and VENEZIA COMMUNITY ASSOCIATION,<br><br>Defendants. | Case No. 2:17-cv-01517-RFB-VCF<br><br>ORDER |
| VENEZIA COMMUNITY ASSOCIATION,<br><br>Counter-Claimant,<br><br>v.<br>RMI MANAGEMENT,LLC dba RED ROCK FINANCIAL SERVICES,<br><br>Counter-Defendant. | |

### I.     INTRODUCTION

Before the Court are two pending motions: Defendant Pine Barrens Street Trust's Motion to Dismiss, ECF No. 42, and Defendant RMI Management, LLC dba Red Rock Financial Services's Motion to Dismiss, ECF No. 43.

### II.    PROCEDURAL BACKGROUND

This matter arises from a nonjudicial foreclosure sale conducted by a homeowners' association under Nevada Revised Statutes ("NRS") Chapter 116 in 2012. ECF No. 1.

Plaintiffs Wells Fargo Bank, N.A. and Federal National Mortgage Association ("Fannie Mae") sued Defendants Pine Barrens Street Trust, RMI Management, LLC dba Red Rock Financial Services ("Red Rock"), and Venezia Community Association ("HOA") on May 30, 2017. ECF No. 1. In the complaint, Plaintiffs allege seven claims: (1) Declaratory Relief against Pine Barrens under the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3); (2) Quiet Title against Pine Barrens under the Federal Foreclosure Bar; (3) Declaratory Relief by Wells Fargo against all Defendants under the Fifth and Fourteenth Amendments to the federal constitution; (4) Quiet Title by Wells Fargo against Pine Barrens under the Fifth and Fourteenth Amendments to the federal constitution; (5) Wrongful Foreclosure by Wells Fargo against all Defendants; (6) Violations of Nevada Revised Statutes ("NRS") Chapter 116 by Wells Fargo against Red Rock and HOA; and (7) Unjust Enrichment by Wells Fargo against Pine Barrens. ECF No. 1.

Red Rock moved to dismiss claims five and six on July 24, 2017. ECF No. 12. Plaintiffs filed a non-opposition to the motion. ECF No. 19. Pine Barrens moved to dismiss the entire complaint on August 14, 2017. ECF No. 17. Wells Fargo opposed the motion and Fannie Mae filed a countermotion for summary judgment. ECF Nos. 24, 25. Pine Barrens filed a reply to the opposition and an opposition to Fannie Mae's counter motion. ECF Nos. 27, 33. Fannie Mae replied. ECF No. 34.

The HOA answered the complaint and asserted a cross-claim against Red Rock on September 1, 2017. ECF No. 21. Red Rock answered the cross-claim on September 21, 2017. ECF No. 28.

On March 23, 2018, the Court denied the pending motions to dismiss and the pending countermotion for summary judgment without prejudice to refiling after a decision issued on a pending certified question before the Nevada Supreme Court. ECF No. 40. The Nevada Supreme Court issued the decision in August 2018.

Pine Barrens now moves to dismiss the complaint in its entirety. ECF No. 42. Plaintiffs opposed the motion, and Pine Barren replied. ECF Nos. 57, 58.

Red Rock also re-moves to dismiss claims five and six. ECF No. 43. The HOA joined to Red Rock's motion but Pine Barrens did not. ECF No. 46; see also docket generally. Plaintiffs

did not oppose the motion. See docket generally; see also ECF No. 50 (allowing an opposition to be filed until October 16, 2018).

### III.     FACTUAL BACKGROUND

The Complaint alleges the following:

This matter concerns a property located at 7245 Pine Barrens Street, Las Vegas, NV 89148. The property sits in a community subject to certain Conditions, Covenants, and Restrictions ("CC&Rs") for the HOA. The CC&Rs include a mortgage savings clause, which states that any lien on the property is not superior to a deed of trust recorded against the property. Because the property sits in a community governed by the HOA, the community members must timely pay homeowners' association dues.

Nonparty Subhash V. Chandran secured a loan for $133,588.00 from World Savings Bank, FSB on January 14, 2004. To do so, Chandran executed a promissory note and a corresponding deed of trust in favor of World Savings Bank. The deed of trust was recorded on January 21, 2004, identifying Chandran as the borrower and World Savings Bank as the beneficiary of record under the deed of trust. Fannie Mae purchased ownership of the loan (the promissory note and the deed of trust) in July 2006.

Wachovia Corporation acquired World Savings Bank in October 2006. Two years later, Wells Fargo acquired Wachovia Corporation. Wells Fargo remained the servicer of the loan and the record beneficiary of the deed of trust for Fannie Mae.

In September 2008, the Federal Housing Financial Agency ("Agency"), an independent federal agency with regulatory and oversight authority over Fannie Mae, placed Fannie Mae into a conservatorship under the Housing and Economic Recovery Act, 12 US.C. § 4511 *et seq.* Under the conservatorship, the Agency succeeds to "all rights, titles, powers, and privileges of [Fannie Mae.]" 12 U.S.C. § 4617(b)(2)(A).

Wells Fargo continued in its role as the servicer for the loan on behalf of Fannie Mae. It also continued to be the record beneficiary of the deed of trust. Wells Fargo was acting in the same capacities through October 30, 2012.

/ / /

The relationship between Fannie Mae and its servicers, including Wells Fargo, are governed by Fannie Mae's Single-Family Servicing Guide ("the Guide"). The Guide provides that servicers may act as record beneficiaries for the deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae upon Fannie Mae's demand.[1] The Guide states:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its … ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.

The Guide allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in … legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]"

Although Fannie Mae has owned the loan ever since 2006, the HOA initiated nonjudicial foreclosure proceedings under NRS Chapter 116 in 2009 after Chandran became delinquent in the homeowners' association dues.

The HOA first caused a notice of lien for delinquent assessment to be recorded on February 3, 2009. Red Rock submitted the notice on behalf of the HOA. The notice of lien stated the outstanding dues totaled $893.50. The notice of lien did not state that the lien qualified as a super-priority lien, making it superior to Fannie Mae's deed of trust.

---

[1] Plaintiffs also allege that: (1) the Guide is publicly available on Fannie Mae's website at https://www.fanniemae.com/content/guide/servicing /index.html and (2) while sections of the Guide have been amended over the course of Fannie Mae's ownership of the loan, the amendments have not changed the Guide in a way material to this case.

Then, on March 31, 2009, Red Rock recorded on behalf of the HOA a notice of default and election to sell pursuant to the delinquent assessments. The notice of default stated the dues owed totaled $1,961.56 at the time, but it did not state that it was noticing a default on a super-priority lien or that the lien was superior to Fannie Mae's deed of trust.

Three years later, on October 4, 2012, Red Rock recorded on behalf of the HOA a notice of foreclosure sale. The notice of foreclosure listed the total dues owed as $5,704.92 and set a sale date for October 30, 2012. Like the prior two notices, the notice of foreclosure did not identify the lien as a super-priority lien or indicate it was superior to Fannie Mae's deed of trust.

The HOA and Red Rock foreclosed on the property on October 30, 2012. Red Rock recorded on behalf of the HOA a foreclosure deed on November 2, 2012. The foreclosure deed indicated that Pine Barrens purchased the property at the foreclosure sale for $9,000.00 despite the fair market value exceeding $200,000.00.

Plaintiffs believe that the statements in the notices indicate that the HOA did not intend to extinguish Fannie Mae's deed of trust. Plaintiffs also believe the statements indicate that the HOA did not authorize the foreclosure of a super-priority portion of its lien.

Further, neither Fannie Mae nor the Agency consented to the extinguishment of Fannie Mae's property interest by way of the foreclosure sale.

**IV.     LEGAL STANDARD**

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

/ / /

# V. DISCUSSION

The Court considers Red Rock's Motion to Dismiss claim five and claim six. It then turns to Pine Barrens's Motion to Dismiss the complaint in its entirety.

### a. Red Rock's Motion to Dismiss

Red Rock moves to dismiss the claim for wrongful foreclosure and the claim for violations of NRS Chapter 116. Accepting the allegations in the complaint as true, the Court determines whether "the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006) (citation omitted). A complaint may be dismissed as untimely only where "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). For statute of limitations calculations, time is computed from the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997).

The statute of limitations in this matter began to run on the date of the foreclosure sale: October 30, 2012. Plaintiffs filed the complaint on May 30, 2017—over four years later. Using the identified dates, the Court applies the appropriate statute of limitations to Plaintiffs' fifth and sixth claims below.

In claim five, Plaintiffs allege a claim for wrongful foreclosure on four bases: (1) Defendants violated requirements of NRS Chapter 116 when conducting the foreclosure sale; (2) Defendants failed to identify the HOA lien as a super-priority lien in the recorded notices; (3) Defendants conducted a commercially unreasonable foreclosure sale; and (4) Pine Barrens did not buy the property in the capacity of a bona fide purchaser.

The Court finds each basis asserted in claim five is time barred. As to the first basis, the Court finds the claim carries a three-year statute of limitations under NRS 11.190(3)(a). NRS 11.190(3)(a) (applying a three-year statute of limitations to actions upon liability created by statute). As to the remaining bases, the Court finds the claim carries a four-year statute of limitations. NRS 11.220 (providing a four-year catch all for claims not based in tort, statutory liabilities, or contract). Because this matter was filed over four years after the statute of limitations began to run, the Court dismisses claim five accordingly.

In claim six, Plaintiffs allege violations of NRS Chapter 116. Because the claim is based on rights liabilities created by a statute, the three-year statute of limitations applies. NRS 11.190(3)(a). Like claim five, the Court dismisses claim six as it was filed over four years after the statute of limitations began to run. The Court grants Red Rock's motion accordingly.[2]

### b. Pine Barrens's Motion to Dismiss

The Court now turns to Pine Barrens's motion. Pine Barren moves to dismiss the complaint in its entirety, arguing Plaintiffs are not entitled to relief because Plaintiffs: (1) failed to take action to protect Fannie Mae's property interest during the foreclosure process; (2) have an adequate remedy at law; (3) cannot bring a claim against Pine Barren, which is a bona fide purchaser; (4) cannot show a constitutional deprivation under the Due Process Clause or the Takings Clause of the federal constitution; (5) failed to adhere to Nevada's recording statutes and Nevada's statute of frauds; (6) were not entitled to a notice specifying the super-priority amount; and (7) cannot show Pine Barrens was unjustly enriched.

Plaintiffs remaining claims fall in three categories: protection under the Federal Foreclosure Bar, the federal constitution, and the principles of unjust enrichment. The Court applies Pine Barrens's arguments to the three categories in turn.

#### i. Claim One and Claim Two: the Federal Foreclosure Bar

Plaintiffs bring the first two claims under the Federal Foreclosure Bar, alleging that the Federal Foreclosure Bar preempts foreclosures conducted under NRS Chapter 116 from extinguishing Fannie Mae's property interest while Fannie Mae remains in the Agency's conservatorship unless the Agency or Fannie Mae consented to extinguishment of the property interest. Pine Barren argues that Plaintiffs fail to allege that Fannie Mae acquired a property interest in compliance with Nevada's recording statutes and statute of frauds and that equitable principals bar Plaintiffs action generally.

The Ninth Circuit resolved the issue of preemption in relation to the Federal Foreclosure

---

[2] Although Pine Barrens failed to join to Red Rock's motion, "a district court may sua sponte dismiss a complaint as untimely so long as the defendant has not waived the defense." Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993). The Court therefore dismisses claim five and claim six against all Defendants.

Bar and NRS Chapter 116 in Berezovsky v. Moniz, 869 F.3d 923, 929–31 (9th Cir. 2017). Per Berezovsky, the Federal Foreclosure Bar preempts nonjudicial foreclosure sales conducted under NRS Chapter 116 from extinguishing Fannie Mae's property interests while Fannie Mae is under the Agency's conservatorship unless the Agency or Fannie Mae has affirmatively consented to the extinguishment of Fannie Mae's property interest by way of the foreclosure. Id. at 927–31 (applying the Federal Foreclosure Bar to preempt the nonjudicial foreclosure of a property owned by Freddie Mac).

Pine Barrens argues that the Federal Foreclosure Bar cannot be applied because Fannie Mae fails to allege it acquired an interest in the property given that it did not record its interest as required by the state recording statutes. SFR Investments Pool 1, LLC v. Green Tree Servicing, LLC, a recent decision from the Nevada Supreme Court, forecloses the argument. 432 P.3d 718 (Nev. 2018) (holding the state recording statutes, prior to the 2011 amendments, do not require an assignment of beneficial interests under a deed of trust to be recorded and failure to record does not prevent an assignee from enforcing its interest late); see also Berezovsky, 869 F.3d at 932 (discussing the interplay of the Federal Foreclosure Bar and NRS 106.210). Because Fannie Mae acquired the loan in 2006—prior to 2011—the state recording statute did not require Fannie Mae to record the assignment of beneficial interests in the deed of trust in its name. SFR Investment Pool 1, 432 P.3d 718.

Pine Barrens also argues the Federal Foreclosure Bar cannot be applied because a deed of trust qualifies as a conveyance of land under Nevada law and must therefore comply with Nevada statutes codifying the statute of frauds, *e.g.* NRS 111.205. The Court finds that Pine Barrens lacks standing to assert the defense. Harmon v. Tanner Motor Tours of Nev., Ltd., 377 P.2d 622, 628 (Nev. 1963) ("The defense of the statute of frauds is personal, and available only to the contracting parties or their successors in interest). Because Pine Barrens was not a party to the sale of the loan to Fannie Mae, it cannot assert a defense based on the statute of frauds.

Pine Barrens next contends that Plaintiffs fail to allege that Fannie Mae acquired a property interest. But the Ninth Circuit has recognized Fannie Mae, and other federal enterprises under the Agency's conservatorship, to prove a property interest at the summary judgment stage by

providing certain evidence. Berezovsky, 869 F.3d at 932–33 (allowing the Guide, employee declarations, and computer screenshots to establish Freddie Mac's property interest); Elmer v. JPMorgan Chase & Co., 707 F.App'x 426, 428–29 (9th Cir. 2017) (unpublished); Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1, LLC, 893 F.3d 1136, 1149–50 (9th Cir. 2018); see also Nationstar Mortg., LLC v. Guberland LLC-Series 3, 420 P.3d 556 (Nev. 2018) (the Nevada Supreme Court allowing the same evidence to establish an enterprises property interest when applying the Federal Foreclosure Bar). Sufficient evidence includes an employee's declaration, business records, and the Guide. The employee's declaration must identify the portions of the business records that indicate when the enterprise purchased the loan and that it maintained a principal-agent relationship with the recorded beneficiary under the deed of trust, its servicer.

Here, Plaintiffs alleges that it purchased the loan in 2006 and that it maintained a relationship with its servicer under the terms of the Guide. The allegations therefore suffice at the motion to dismiss stage; a property interest has been alleged and the terms of the Guide show that a principal-agent relationship exists between Fannie Mae and Wells Fargo.

Based on the foregoing, the Court is also not persuaded by Pine Barrens's reliance on Leyva v. Nat'l Default Servicing Corp., 255 P.3d 1275 (Nev. 2011). The Nevada Supreme Court's 2018 decision in Nationstar Mortg., LLC v. Guberland LLC-Series 3—issued subsequently to the 2011 Leyva decision—cited Berezovsky with favor and allowed evidence materially identical to that presented in Berezovksy to establish a federal enterprise's property interest. 420 P.3d 556.

Pine Barren also asks the Court to find that the allegations show Plaintiffs implicitly consented to the extinguishment of Fannie Mae's property right by way of the foreclosure sale. But "[t]he Federal Foreclosure Bar does not require the Agency to actively resist foreclosure. Rather, the statutory language cloaks Agency property with Congressional protection unless or until the Agency affirmatively relinquishes it." Berezovsky, 869 F.3d at 929. The Court dismisses the argument accordingly.

To the extent that Pine Barrens contends that foreclosure of the HOA lien does not interfere with Fannie Mae's right to repayment under the promissory note, the argument is immaterial. The Federal Foreclosure Bar does not consider whether the federal enterprises' interests can be

enforced in another manner under the law—it completely preempts the extinguishment of the interest without consent while the enterprise remains in the Agency's conservatorship. Berezovsky, 869 F.3d 923; Fed. Home Loan Mortg. Corp., 893 F.3d 1136.

Finally, to the extent that Pine Barrens argues that equity should bar the application of the Federal Foreclosure Bar, *e.g.* the failure to mitigate or the status of a bona fide purchaser, the Court is guided by the Berezovsky holding. Berezovsky holds that the Federal Foreclosure Bar preempts foreclosures conducted under NRS Chapter 116 from extinguishing a federal enterprise's property interest while the enterprise is under the Agency's conservatorship; state laws that impliedly conflict with the Federal Foreclosure Bar are preempted. See Berezovsky 869 F.3d at 931.

### ii. Claim Three and Claim Four: the Fifth and Fourteenth Amendments to the Federal Constitution

In the next set of claims, Plaintiffs argue the foreclosure sale facially violated Wells Fargo's due process rights. Defendant moves to dismiss the claims, arguing NRS Chapter 116 is neither facially unconstitutional nor amounts to a taking.

Plaintiffs' due process claim is foreclosed by precedent from the Nevada Supreme Court. In Bourne Valley Court Trust v. Wells Fargo Bank, NA, the Ninth Circuit held that the opt-in notice scheme outlined in NRS Chapter 116 did not meet the minimum requirements of constitutional due process and that NRS 116.31168 did not incorporate the notice requirements of NRS 107.090. 832 F.3d 1154, 1158–59 (9th Cir. 2016), cert. denied, 137 S. Ct. 2296 (2017). This holding was based upon the Ninth Circuit's interpretation of Nevada's statutory scheme under NRS Chapter 116.

However, the Nevada Supreme Court had not yet construed the applicable statutes. But the Nevada Supreme Court thereafter held that NRS 116.31168 incorporated the notice requirements of NRS 107.090. SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248, 1252 (Nev. 2018). Thus, the Nevada Supreme Court found notice to be mandatory to interest holders like Plaintiffs. Id.

As the Nevada Supreme Court had not previously had an opportunity to explicitly construe the respective state statutes in terms of their notice requirements and as the Nevada Supreme Court

is the final arbiter of the construction of Nevada statutes, this Court must follow the Nevada Supreme Court's interpretation of Nevada statutes in this case. California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1146 (9th Cir. 2001) (explaining that "it is solely within the province of the state courts to authoritatively construe state legislation"); Owen By & Through Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983) (noting that Ninth Circuit's interpretation of state law is only binding to the extent there is no subsequent indication from the state court that the interpretation was incorrect). This Court has previously found consistent with the Nevada Supreme Court's interpretation of Nevada law that NRS 107.090 as incorporated by the Nevada HOA lien statute satisfies due process requirements. JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC, 200 F. Supp. 3d 1141, 1160–61 (D. Nev. 2016). The Court incorporates that prior reasoning by reference. Based upon the holding of the Nevada Supreme Court in SFR Investments Pool 1 and this Court's prior analysis, the Court finds that Nevada's statutory scheme in NRS Chapter 116 does not violate due process. Therefore, Plaintiffs' contention that the statute facially violates its due process rights fails as a matter of law. The Court grants Pine Barrens's motion to dismiss as to claim three and claim four accordingly.[3]

### iii. Claim Seven: Unjust Enrichment

In the final claim, Plaintiffs allege that Pine Barrens was unjustly enriched by obtaining purportedly free-and-clear title to the property for $9,000.00 when the fair market value exceeded $200,000.00. The benefit conferred on Pine Barrens occurred at the detriment of Wells Fargo since Wells Fargo has expended funds to maintain the property, including payments for taxes and utilities. Pine Barrens argues for dismissal of the claim for two reasons. First, Pine Barrens argues that Plaintiffs did not confer any benefit on Pine Barrens; the foreclosing agent did. Second, Pine Barrens argues that Plaintiffs voluntarily paid the taxes and the utilities when it had no interest in the property.

/ / /

---

[3] The Court notes that Pine Barrens argues for dismissal of the claims based on the foreclosure sale not constituting a takings under the federal constitution. However, Plaintiffs did not allege a claim that the foreclosure sale amounted to a takings. Plaintiffs acknowledge as much in the response. The Court therefore does not undertake a takings analysis.

The Court finds both of Pine Barrens's arguments to be premature. First, Plaintiffs allege that the benefit conferred to Pine Barrens are Plaintiffs' payments related to maintenance of the property. Thus, Pine Barrens's first argument is unpersuasive; Plaintiffs alleged that they conferred a benefit on Pine Barrens.

Second, "[t]he voluntary payment doctrine is a long-standing doctrine of law, which clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct., 338 P.3d 1250, 1252 (Nev. 2014) (citation omitted). Taking the allegations in the complaint as true, the Court finds that it cannot make a determination that Plaintiffs were not under an obligation to make the alleged payments at this time.

## VI. CONCLUSION

**IT IS ORDERED** that Defendant RMI Management, LLC dba Red Rock Financial Services's Motion to Dismiss (ECF No. 43) is GRANTED. The Court dismisses claim five and claim six.

**IT IS FURTHER ORDERED** that Defendant Pine Barrens Street Trust's Motion to Dismiss (ECF No. 42) is GRANTED in part and DENIED in part. The Court dismisses claim three and claim four.

DATED: March 31, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**